# THE STATE OF SOUTH CAROLINA
## In The Supreme Court

In the Matter of Bennett Joseph Schiller, III, Respondent.

Appellate Case No. 2017-001645

---

Opinion No. 27753
Submitted October 24, 2017 – Filed November 22, 2017

---

## PUBLIC REPRIMAND

---

Lesley M. Coggiola, Disciplinary Counsel, and Julie K. Martino, Assistant Disciplinary Counsel, both of Columbia, for Office of Disciplinary Counsel.

Thomas A. Pendarvis, of Pendarvis Law Offices, PC, of Beaufort, for Respondent.

---

**PER CURIAM:** In this attorney disciplinary matter, respondent and the Office of Disciplinary Counsel have entered into an Agreement for Discipline by Consent (Agreement) pursuant to Rule 21 of the Rules for Lawyer Disciplinary Enforcement (RLDE) contained in Rule 413 of the South Carolina Appellate Court Rules (SCACR). In the Agreement, respondent admits misconduct and consents to a public reprimand. We accept the Agreement and issue a public reprimand. The facts, as set forth in the Agreement, are as follows.

## Facts

Co-counsel was retained by Client, a North Carolina resident, to represent him with regards to a motor vehicle accident that occurred in North Carolina. Co-counsel subsequently associated respondent on the case. Neither co-counsel nor respondent were admitted to practice law in North Carolina.

Client signed two fee agreements.  The first agreement was a fee agreement stating the attorneys' fee was 33% of any recovery and that if there was no recovery, Client would be responsible for "all actual expenses."  The agreement did not specify whether the attorneys' fee would be calculated before or after litigation and other expenses were deducted.  Although respondent asserted he and his co-counsel explained to Client how funds would be distributed under the agreement, respondent admits that the failure to document in writing whether litigation and other expenses are to be deducted before or after a contingent fee is calculated is a violation of Rule 1.5(c) of the North Carolina Revised Rules of Professional Conduct.[1]

After recovering the policy limit of $30,000 from the at-fault driver's insurance carrier, respondent and co-counsel pursued recovery under Client's underinsured motorist (UIM) policy.  That carrier tendered $220,000 to respondent and co-counsel, which represented the policy limit of $250,000 minus a set-off of $30,000 based on the payment by the at-fault driver's carrier.

Client refused to accept the funds due to a disagreement over the disbursement statement, specifically, the disbursement of attorneys' fees.  Client informed respondent and co-counsel he was terminating the "fee contract," as he believed the fees were unreasonable and he did not understand there were other fee agreement options.  Client also stated he did not understand from the fee agreement that respondent and co-counsel could place a lien on the insurance proceeds for the amount of the attorneys' fees owed.

Thereafter, respondent sent letters to Client's UIM carrier informing the carrier that he and co-counsel had a lien on the $220,000 for their one-third contingency fee.  In one of the letters, respondent directed the carrier not to discuss the matter with Client or Client's brother without the consent of respondent or co-counsel.

Subsequently, Client left a voice message with the carrier notifying the carrier that he had terminated respondent and co-counsel.  Client also sent a letter to respondent and co-counsel asking them to notify the carrier that they were no longer representing Client.

---

[1] Pursuant to Rule 8.5(b)(2) of the South Carolina Rules of Professional Conduct, Rule 407, SCACR, because the predominant effect of the conduct at issue was in North Carolina, the North Carolina Revised Rules of Professional Conduct apply.

The carrier sent a letter to respondent informing him Client had notified the carrier that he had discharged respondent and co-counsel. The carrier requested respondent contact Client about the outstanding claim. Three weeks later, and over a month after Client requested such action, respondent and co-counsel notified the carrier they were no longer representing Client and returned the insurance proceeds to the carrier.

Client alleged respondent and co-counsel failed to withdraw as counsel after he terminated the fee agreement and that they failed to inform the UIM carrier they were no longer representing Client after he requested they do so. Respondent admits his failure to withdraw from representation after multiple communications from Client requesting respondent and co-counsel cease representation violated Rule 1.16(a)(3) of the North Carolina Revised Rules of Professional Conduct.

Finally, Client alleged respondent and co-counsel forged Client's signature on a document entitled "Settlement Agreement and Covenant Not to Enforce Judgment - North Carolina." Client stated he had never seen the document but it had a signature purporting to be his that was witnessed by respondent and notarized by respondent's paralegal.

Respondent and co-counsel explained they discussed with Client the possibility of pursuing the at-fault driver's personal assets but Client understood the only way to secure payment more quickly was to accept the limits of the driver's insurance policy by way of a covenant not to execute and accept the limits of the UIM coverage on a policy release. Respondent and co-counsel stated Client understood the difficulty of recovering from the driver's personal assets and therefore agreed to accept the insurance limits. Respondent and co-counsel stated they explained the settlement agreement and disbursement from the driver's carrier to Client and asked him to come to the office and sign the covenant not to execute and the check issued by the carrier. According to respondent and co-counsel, Client directed them to sign the items for him and send him the check.[2] Respondent signed the covenant not to execute, witnessed it himself, and had his paralegal notarize it. The document stated the person signing was affirming he had carefully read the document, understood its contents, and was signing it as his own free act. The cover letter respondent sent to Client along with the check did not reference the

---

[2] Respondent provided documents to support his position that Client gave him permission to sign Client's name, but the documents are not contemporaneous with the signing and notarizing of the documents.

covenant not to execute or indicate a copy was enclosed.

Respondent admits the covenant not to execute was falsely witnessed and notarized and that he did not provide a copy to Client. Respondent states the document was not relied on by the at-fault driver's insurance carrier because Client refused to sign the settlement agreement.

Respondent admits his actions with regard to the covenant not to execute were improper and in violation of the following North Carolina Revised Rules of Professional Conduct: Rule 4.1 (a lawyer shall not knowingly make a false statement of material fact or law to a third person); Rule 5.3(b) (a lawyer with supervisory authority over a nonlawyer shall make efforts to ensure the nonlawyer's conduct is compatible with the professional obligations of the lawyer); Rule 5.3(c)(1) (a lawyer is responsible for the conduct of a nonlawyer who commits a violation of the Rules of Professional Conduct when the lawyer orders or ratifies such conduct); and Rule 8.4(d) (it is professional misconduct to engage in conduct that is prejudicial to the administration of justice).

## Law

Respondent admits that by his conduct he has violated the above provisions of the North Carolina Revised Rules of Professional Conduct. He also admits the violations constitute grounds for discipline under Rule 7(a)(2) of the South Carolina Rules for Lawyer Disciplinary Enforcement, Rule 413, SCACR.

## Conclusion

We find respondent's misconduct warrants a public reprimand. Accordingly, we accept the Agreement and publicly reprimand respondent for his misconduct. In addition, as set forth in the Agreement, respondent shall (1) complete the Legal Ethics and Practice Program Ethics School and a notary public class within one year of being disciplined; (2) require all notary publics in his office to attend a notary public class within the same time period, to maintain records of attendance, and to sign a statement that they have read and will abide by the South Carolina Notary Public Reference Manual; and (3) pay the costs incurred in the

40

investigation of this matter by ODC and the Commission on Lawyer Conduct within thirty days of the date of this opinion.

**PUBLIC REPRIMAND.**

**BEATTY, C.J., KITTREDGE, HEARN, FEW and JAMES, JJ., concur.**